JOSEPH CHIARELLA and Another, Individually and as Administra-
tors, etc., of NICOLA CHIARELLA (Also Known as NICHOLAS
CHIARELLA), Deceased, Claimants, *v.* THE STATE OF NEW YORK,
Defendant.

(Claim No. 24011.)

Court of Claims, March 2, 1937.

*Phillips, Heaney & Hausett* [*Normington Schofield* of counsel], for the claimants.

*John J. Bennett, Jr., Attorney-General* [*Owen M. Begley, Assistant Attorney-General,* of counsel], for the defendant.

RYAN, J.  From 1896 until 1932 one Nicola Chiarella occupied land owned by the New York Central and Hudson River Railroad Company at Storm King, Dutchess county, N. Y.  Thereon he placed certain structures.  He began with a one-story building to which from time to time he made additions so that ultimately there was a building approximately one hundred and fifty feet by twenty-six feet.  This housed among other accommodations, living quarters, a general store and at one time a post office.  This property was assessed upon the rolls of the town of Fishkill at a valuation of $1,800, and upon that Nicola Chiarella paid taxes.  There is testimony that the original cost of the buildings was about $6,000, and that in 1932 they were worth $3,500.  We find that in that year their fair valuation was $2,500.

The record does not disclose the nature of the Chiarella tenancy from 1896 until 1929.  Apparently it was permissive and not illegal.  On October 8, 1929, the railroad company and Chiarella executed a written lease describing the real property occupied and reciting that it was to be used as a " site for buildings."  The lease was for the term of one year from the 1st of October, 1929, unless sooner terminated.  The stipulated annual rent was ten dollars.  The lease provided that the lessor reserved the right to terminate it and the term thereof at any time upon giving ten days notice in writing and it further provides that the lessee might " within five days after the expiration or other termination of the lease " remove all buildings or structures now on, placed or erected by him, and further that all buildings, structures and improvements " not so removed shall thereupon become and be absolutely the property of said lessor, and may be removed by it, and said lessee hereby conveys the same absolutely to said lessor, its successors or assigns."

Chiarella paid the stipulated rent for the year begining October 1, 1929, for the year beginning October 1, 1930, and for the year beginning October 1, 1931.  However, on December 12, 1931, a notice in writing signed by the railroad company and requiring that the lessee surrender up the premises within ten days thereafter was served upon him.  At the same time the railroad company mailed or delivered to the lessee its check for ten dollars upon a voucher which recited that it was paid to " refund payment received Oct. 6,

1931, to cover rental of land previously leased from this company, as we have been advised that this lease has been terminated."

Nicola Chiarella, the payee of the check, collected and retained the funds. Afterwards the railroad company billed him for two dollars and twenty-six cents rent for the period October 1 to December 22, 1931. This he did not pay. It appears that in February following summary proceedings to dispossess Chiarella were instituted.

Upon the trial before us there was admitted in evidence a document purporting to be a copy of a warrant to the sheriff issued by a justice of the peace to remove Chiarella from the premises. Although claimants' counsel waived his objection to the admission of this document, standing alone it presents no sufficient or proper proof of the legality of proceedings in the Justice's Court. (See Civ. Prac. Act, § 387.)

However, the testimony is to the effect that in the early days of March, 1932, the lessee moved from the premises. He did not remove the buildings. But at about that time one McNeil, a State's claim agent, had a conversation with Nicola Chiarella in the presence of the latter's son, in which he told them that the " State was going to take these buildings over and he would look after it."

The second day thereafter the son saw the buildings being demolished and the third day he saw where they had been burned. A few weeks afterwards McNeil returned and secured from the son various documents including the bill of sale of the original building, also receipts for town and school taxes and rent receipts from the railroad company. McNeil again said, " the State would take care of it." Nothing further was done.

Nicola Chiarella died November 22, 1932. On December 6, 1932, claimants herein, his sons Joseph and Anthony, were duly appointed administrators of his estate. On June 20, 1933, a notice and a copy of an appropriation map were served on these claimants. Within two years thereafter, and on May 24, 1935, this claim was filed.

Claimants have proceeded to trial upon the theory that their buildings have been appropriated by the State of New York. Actually, as we have shown, the buildings were not in existence on the date of the service of notice of appropriation nor even on the date of claimants' intestate's death. It seems, nevertheless, that the representatives of the railroad company and of the Department of Public Works have recognized that Nicola Chiarella had some property rights which it was necessary to acquire in a legal manner as a part of the proceeding for the elimination of this grade crossing. It is undisputed that the claim agent told Chiarella that the State

was going to take the buildings and that he " would look after it," implying that Chiarella would be paid. It appears that the railroad company was not satisfied with the notice served by it canceling the lease but in addition conducted or attempted to conduct a summary proceeding in Justice's Court for repossession of its own real property. It appears further that the Department of Public Works gave formal notice of the appropriation.

However, it is not easy to define and explain what were the rights of Chiarella nor what are the rights of the claimants herein. The learned Assistant Attorney-General who tried the case relies upon the terms of the lease and the notice of cancellation thereof served by the railroad company. He asserts that the ten days provided for in the notice having expired, the lease was terminated and canceled and that within five days thereafter the buildings not having been removed by Chiarella, the title to them reverted to the railroad company. A strict construction of the written lease standing alone might require us to adopt this theory. But the result would be most inequitable. We do not believe that the State of New York can afford to take advantage of such technicalities. Nor do we believe that the agents of either the State or of the railroad corporation intended anything but that the owner of the buildings should be compensated for their fair value. Their dealings with Chiarella indicate this. Certainly justice demands it.

The notice of appropriation is dated June 6, 1933, and reads as follows:

" STATE OF NEW YORK
Department of Public Works

Grade Crossing Elimination
Case number 4885
Map number    12
Parcel number  16

To:   Anthony Chiarella,
      33 John St., Beacon, N. Y.
      Leasehold interest.

Mary Buonagura,
69 Marcy Avenue,
Brooklyn, New York.
Leasehold interest.

Joseph Chiarella,
15 St. Luke's Place,
Beacon, New York.
Leasehold interest.

Eleanora Scalzo,
21 Henry St.,
Beacon, New York.
Leasehold interest.

Theresa Carozino,
533 Washington St.,
Peekskill, New York.
Leasehold interest.

"Owners of the lands and easement rights described in the description and map hereinafter mentioned, and owners of any right, title or interest in and to such lands and easement rights:

"Take notice that, pursuant to the provisions of Chapter 678 of the Laws of 1928, there was filed in the office of the Department of Public Works of the State of New York on the 21st day of September, 1931, a description and original tracing of a map, together with a certificate as to the accuracy thereof, of the lands which the Public Service Commission deems necessary and of the lands in and to which the Public Service Commission deems an easement right to be necessary in the elimination of highway-railroad crossings at grade, approved by order of the Public Service Commission on the 15th day of September, 1931; that there was filed in the office of the Department of State on the 23rd day of September, 1931, a duly certified copy of such description and map; that a copy of such description and map is annexed hereto and is herewith served upon you pursuant to the direction of the Public Service Commission.

"In testimony whereof, the Department of Public Works of the State of New York has caused its seal of office to be hereunto affixed and these presents to be subscribed by the Assistant Chief Engineer of such Department this 6th day of June, 1933.

"H. O. SCHERMERHORN,

"<em>Assistant Chief Engineer.</em>"

Of the five to whom the notice is addressed only two have joined in filing this claim. This they have done both individually and as administrators of their father's estate. The record does not disclose the identity of the three others. They may be, and probably are, the daughters of Nicola Chiarella and the sisters of these claimants.

Attached to the notice of appropriation is a blueprint showing a map and description of the property. On the blueprint appears this recitation: "Temporary easement for removing buildings. A temporary easement for the purpose of removing buildings until the approval of the completed work by the Public Service Commission, in and to all that piece or parcel of land hereinafter designated as Parcel 16 * * * and described as follows:" The description of the property by metes and bounds is then set forth.

The approval of the completed work by the Public Service Commission was dated December 13, 1932. (See stipulation dated February 24, 1937.) Yet on June 6, 1933, the Assistant Chief Engineer of the Department of Public Works subscribed the notice of appropriation reciting that these claimants and others had a leasehold interest in the property in question.

The Grade Crossing Elimination Act (Laws of 1928, chap. 678) provides as follows:

" § 5. 1. The Public Service Commission shall direct the Department of Public Works or the railroad corporation or corporations to prepare an accurate description and map of any lands which the Commission may deem necessary in the elimination of any crossing or of any lands in and to which an easement right may be deemed necessary, specifying the particular easement right, and such Commission shall also direct the Department of Public Works to make or cause to be made an appraisal of such lands and easement rights. On the approval of such description, map and appraisal by such Commission, such Commission shall deliver such description and map to the Department of Public Works and shall direct such Department to acquire such lands and easement rights by appropriation as prescribed by this act.

" 2. Such description and the original tracing of such map shall be filed in the office of the Department of Public Works, which shall cause a certified copy of such description and map to be filed in the office of the Department of State and notice of such filing to be given to the Public Service Commission.

" 3. On the filing of such description and map in the office of the Department of State, the People of the State of New York, their officers and agents, may immediately enter upon and take possession of the lands so described for the purpose of the elimination of any crossing.

" 4. The Department of Public Works shall thereupon deliver to the Attorney-General a copy of such description and map, whereupon it shall be the duty of the Attorney-General to advise and certify to the Department of Public Works the names of the owners of the lands so described, including the owners of any right, title or interest in and to such lands. The Department of Public Works shall thereupon cause a copy of such description and map, with notice of the filing thereof in the office of the Department of State, to be served on the owner or owners of the lands and easement rights so certified by the Attorney-General and from the time of such service the appropriation by the People of the State of the property described in such notice shall be deemed complete and, thereupon, such property shall become and be the property of the People of the State."

From the foregoing it appears that any time after September 25, 1931, the date when the official map was filed in the office of the Secretary of State, the State of New York, its officers and agents, were entitled to immediately enter upon and take possession of the lands described in said map. At that time Nicola Chiarella was in full possession of the premises. His lease had not been canceled and his buildings were in existence. We believe that his rights should be determined as of that date. That the State of New

York did not elect to physically possess itself of his buildings and raze them until March, 1932, should not be the determining factor herein. True, under the reading of section 5, subdivision 4, above quoted, the appropriation is to be deemed complete only from the time of service of the notice, in this instance June 20, 1933. But the action of the State in serving such notice must be regarded as confirmatory of what had preceded. It started the running of the Statute of Limitations. We have uniformly held that claims must be filed within two years from the service of the notice of appropriation.

As we said, we believe that the rights of Nicola Chiarella should be determined as of September 25, 1931. Whatever the nature of his property theretofore, it became on that date a claim or cause of action against the State of New York. As such it passed to his administrators upon his death. They are entitled to an award herein in the amount of $2,500.

Interest on this amount should be awarded from September 25, 1931, except that it should be suspended from December 20, 1933, to May 24, 1935, as required by section 24 of the Court of Claims Act. It may be argued that interest should not begin to run until June 20, 1933, but such a holding would be unjust. We think the State should not be permitted by withholding the service of formal notice to deprive the property owner of the use of his buildings and also of interest on that sum which we have found to be fair compensation for them. Decision accordingly.

BARRETT, P. J., concurs.